UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

STANLEY MYRTIL,
Petitioner,

v.

MARKWAYNE MULLIN, et al.,
Respondents.

Case No.: 26cv6058-LL-DEB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

**[ECF No. 1]**

Pending before the Court is Petitioner Stanley Myrtil's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). The matter is fully briefed, and the Court deems it suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1. For the reasons below, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) and **ORDERS** Petitioner's immediate release from custody.

/ / /

## I. BACKGROUND

Petitioner was born in Haiti in 1992 and was brought to the United States when he was very young. Pet. 2; *see also* Exhibit A, Decl. of Stanley Myrtil ¶ 1. Petitioner and his family applied for asylum, and he was eventually given a green card and granted status as a lawful permanent resident. Pet. 2; *see also* Myrtil Decl. ¶ 2. In 2021, Petitioner plead no contest to a property crime. Pet. 2; *see also* Myrtil Decl. ¶ 3. Upon completing his sentence, he was transferred to ICE detention and placed in removal proceedings. Pet. 2; *see also* Myrtil Decl. ¶ 3. On July 31, 2023, Mr. Myrtil was ordered removed to Haiti. Pet. 2; *see also* Myrtil Decl. ¶ 4. At the same time, he was also granted withholding of removal to Haiti. *Id.* He did not file an appeal. *Id.* He was released on an Order of Supervision. Pet. 2; *see also* Myrtil Decl. ¶ 4. For the next three years, Petitioner attended his ICE check-ins as instructed. Pet. 2; *see also* Myrtil Decl. ¶ 5. In September 2026, Mr. Myrtil was arrested by ICE following a traffic stop. Pet. 2; *see also* Myrtil Decl. ¶ 6. He was eventually taken to Otay Mesa Detention Facility, where he has remained since. Pet. 2; *see also* Myrtil Decl. ¶ 6. Petitioner does not recall receiving notice of why he was being re-detained, or an informal interview at which he could contest his arrest. Pet. 3; *see also* Myrtil Decl. ¶ 7. Since he has been in custody, he has not received any information about his travel plans or documents. Pet. 3; *see also* Myrtil Decl. ¶ 7.

Accordingly, Petitioner brings the instant habeas Petition which alleges that his detention is unlawful for the following reasons: (1) ICE failed to comply with its own regulations when it re-detained Petitioner, violating his rights under applicable regulations and due process" (2) Petitioner's detention violates *Zadvydas* and 8 U.S.C. § 1231; and (3) Petitioner is entitled to adequate notice and a meaningful opportunity to be heard before he can be removed to a third country. Pet. at 3-17.

Specifically, in support of Petitioner's first claim regarding the government's failure to follow its own regulations, Petitioner argues in relevant part:

Two regulations establish the process due to someone who is re-detained in

immigration custody following a period of release. 8 C.F.R. § 241.4(l) applies to all re-detentions, generally. 8 C.F.R. § 241.13(i) applies as an added, overlapping framework to persons released upon good reason to believe that they will not be removed in the reasonably foreseeable future, as Mr. Myrtil was. *See Phan v. Noem*, No. 25-cv-2422-RBM-MSB, 2025 WL 2898977 *3–*5 (S.D. Cal. Oct. 10, 2025) (explaining this regulatory framework and granting a habeas petition for ICE's failure to follow these regulations for a refugee of Vietnam who entered the United States before 1995); *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025) (same as to an Iranian national).

These regulations permit an official to "return [the person] to custody" only when the person "violate[d] any of the conditions of release," 8 C.F.R. §§ 241.13(i)(1), 241.4(l)(1), or, in the alternative, if an appropriate official "determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," and makes that finding "on account of changed circumstances," 8 C.F.R. § 241.13(i)(2).

No matter the reason for re-detention, the re-detained person is entitled to certain procedural protections. For one, "'[u]pon revocation,' the noncitizen 'will be notified of the reasons for revocation of his or her release or parole.'" *Phan*, 2025 WL 2898977 at *3–4 (quoting §§ 241.4(l)(1) and 241.13(i)(3)). Further, the person "'will be afforded an initial informal interview promptly after his or her return' to be given 'an opportunity to respond to the reasons for revocation stated in the notification.'" *Id.* (quoting §§ 241.4(l)(1)).

In the case of someone released under § 241.13(i), the regulations also explicitly require the interviewer to allow the re-detained person to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." § 241.13(i)(3).

ICE is required to follow its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("The legal proposition that agencies may be required to abide by certain internal policies is well-established."). A court may review a re-detention decision for compliance with the regulations, and "where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz*, 804 F.

> Supp. 3d at 1099–1100 (collecting cases); *accord Phan*, 2025 WL 2898977 at *5.
>
> ICE followed none of its regulatory prerequisites to re-detention here. First, ICE did not give Mr. Myrtil adequate notice or an opportunity to respond. Mr. Myrtil was not given a reason for why his supervision was revoked. *Id.* ¶ 7.
>
> Second, Mr. Myrtil does not believe he received an informal interview where an officer explained the purported "changed circumstances" underlying his revocation. "Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Sarail A. v. Bondi*, 803 F.Supp.3d 775, 780 (D. Minn. 2025). Rather, "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." *Id.* By "identif[ying] the category—'changed circumstances'—but fail[ing] to notify [Petitioner] of the reason—the circumstances that changed and created a significant likelihood of removal in the reasonably foreseeable future—[ICE] failed to follow the relevant regulation." *Id.* This failure to identify any changed circumstances also means Mr. Myrtil has not been afforded a meaningful opportunity to respond to the reasons for revocation or submit evidence rebutting his re-detention.
>
> Numerous courts have released re-detained immigrants after finding that ICE failed to comply with applicable regulations this summer and fall. These have included courts in this district, as well as courts outside this district. "[B]ecause officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and [Mr. Myrtil] is entitled to his release (subject to the same Order of Supervision that governed his most recent release)." *Liu v. Carr*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025).

Pet. at 3-6. The Court finds that its order on the first claim (due process) is dispositive, and therefore declines to rule on claims two (*Zadvydas*) and three (removal to a third country).

## II. DISCUSSION

The Court finds that the Government has violated its own regulations under § 241.13(i) and § 241.4(l). ICE's own regulations state in relevant part:

> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service

> determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. . . . Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*See* 8 C.F.R. §§ 241.13(i)(2)–(3), 241.4(l). First, ICE must determine that the detainee is significantly likely to be removed in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). The Government states that "[o]n September 10, 2026, Petitioner was encountered by ICE after he was arrested in Lee County, Florida, for driving without a license." ECF No. 5 ("Return") at 3 (citing Flores Decl. at ¶ 13; Exhibit 1). The Government further states that "ICE issued a detainer for Petitioner and he was subsequently taken into ICE custody to effectuate Petitioner's removal order." *Id.* The Government concedes that Petitioner was not provided with written notice of his revocation of release. Return at 4. Notwithstanding this, the Government asserts that "[s]ince Petitioner became subject to a final removal order, ICE has worked diligently to identify a third country that is willing to accept Petitioner for removal." *Id.* (citing Flores Decl. at ¶ 15). The Government further states that "when a third country is identified, ICE will provide Petitioner with written notice." *Id.*

"241.13(i)(2) requires that [the changed circumstances] determination is made before the removable alien has had his release revoked." *See Tran v. Noem*, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025). Here, ICE did not even attempt to identify where Petitioner can be removed until after it revoked Petitioner's supervision. Accordingly, there could not have been "changed circumstances" that "there is a reasonable likelihood that the alien may be removed in the foreseeable future." § 241.13(i)(2). Additionally, even if ICE assessed the likelihood of Petitioner's removal before revoking his release, it would not have been "on account of" changed circumstances. With "no evidence of an actual determination of changed circumstances that justified the initial revocation of [Petitioner's] release," the Government has violated its own rule under

§ 241.13(i)(2). *See Tran*, 2025 WL 3005347, at *2.

Second, an alien must "be notified of the reasons for revocation of his or her release" that are actually "stated in the notification." § 241.13(i)(3); *see Tran*, 2025 WL 3005347, at *3 (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"). Here, the Government has conceded that Petitioner did not receive the Notice of Revocation form. Return at 4. In addition, there is nothing in the record regarding what Petitioner's arresting officers told him. "The contention that an arrest, without more, constitutes evidence of criminal activity is without merit." *Miao v. Chestnut*, No. 1:26-CV-01271-KES-SKO (HC), 2026 WL 947020, at *1 (E.D. Cal. Apr. 8, 2026) (ordering immediate release of a petitioner who was similarly re-detained without process and had a previous arrest) (citing *Duncan v. Cal.*, No. S-04-523 LKK/PAN, 2006 WL 1883385, at *2 (E.D. Cal. July 7, 2006)). Respondents never state that Petitioner was *convicted of* the offense of driving without a license—in fact, they report that Petitioner was transferred from state criminal custody directly into ICE custody just a couple days after his arrest. Return at 2; ECF No. 5-1 at 2. The fact that Petitioner never received a Notice of Revocation of Release and there is nothing in the record to suggest that Petitioner received any process before he was detained in ICE custody does not satisfy the "the due-process notification requirement of § 241.13(i)(3)." *See Tran*, 2025 WL 3005347, at *3; *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv 02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"); *see also Tan-Gutierrez v. Noem*, Case No.: 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *3 (S.D. Cal. Jan. 26, 2026) ("ICE's conclusory explanation for revoking Petitioner's release 'did not offer [her] adequate notice of the basis for the revocation decision such that [she] could meaningfully respond at the post-detention informal interview." ') (quoting *Diaz v. Wofford*, Case No. 1:25CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025).

Finally, after re-detaining an alien who was out on supervision, ICE must "promptly"

conduct "an initial informal interview" to "afford the alien an opportunity to respond to the reasons for revocation." § 241.13(i)(3). Apart from ICE not having reasons to re-detain him based on changed circumstances, Petitioner asserts that "he does not believe he received an informal interview where an officer explained the purported 'changed circumstances' underlying his revocation.'" Pet. at 5. The Government does not dispute this or provide any evidence that Petitioner received the requisite initial informal interview. *See* Return. These failings, too, violated Petitioner's due process rights. *See Tran*, 2025 WL 3005347, at *3 (finding the same); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard.").

The Government does not dispute that it has failed to follow its own rules for re-detainment, instead arguing that "even assuming the agency's compliance with the relevant regulations fell short," Petitioner has not established prejudice nor a constitutional violation. *See* Return at 7. However, courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). This is so even when, unlike here, the Government has obtained a petitioner's travel document back to his or her country of origin after their re-detainment. *See id*. at *1-6 (granting habeas and releasing the petitioner with a deportation order back on supervision when the respondents failed to comply with § 241.13(i) and § 241.4(l) despite later securing travel documents for his country of origin); *Tran*, 2025 WL 3005347, at *1-4 (same).

Because the Government failed to comply with § 241.13(i) and § 241.4(l) when they revoked Petitioner's supervised release, issuing a writ to reinstate that release is warranted.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. The Government shall immediately release Petitioner from custody subject to the conditions of his prior release. Petitioner shall comply with all conditions that were in effect before his re-detainment. The Government **SHALL NOT** re-detain the noncitizen

under 8 U.S.C. § 1231(a)(6) unless and until the Government follows all applicable statutory and regulatory procedures. The Clerk of Court shall close this case.

Dated: November 16, 2026

Honorable Linda Lopez
United States District Judge